IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| | : | No. 10-121 |
| ROBERT MCKNIGHT, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                       September 10, 2010

      Defendant Lamont Paige seeks to suppress evidence seized during a warrantless search of his former apartment, arguing the search was conducted in violation of his Fourth Amendment rights. Because this Court finds agents were objectively reasonable in believing they had valid third-party consent to obtain entry into the apartment, Paige's motion will be denied.

**Findings of Fact**

1. On January 20, 2010, two men robbed the Jenkintown, Pennsylvania, branch of TruMark Financial Credit Union.

2. In the course of conducting an investigation of the TruMark robbery, Federal Bureau of Investigation (FBI) agents formed the belief that the two robbery perpetrators were Defendants Robert McKnight and Lamont Paige.

3. On February 3, 2010, FBI agent Vito Roselli interviewed Paige's former girlfriend, Clivette Walker. Walker told agents she and Paige had formerly lived together in the first floor apartment of 557 Allengrove Street, in Philadelphia, Pennsylvania.

4. Paige and Walker, who both signed the apartment's lease in 2007, had received notice of eviction from their landlord, David Ghauri, dated December 16, 2009. This notice informed Paige and Walker they were being evicted from the apartment for failure to pay

rent and they had ten days to leave the apartment. Paige and Walker were several months behind on their rent in December 2009. Neither tenant paid rent for December 2009 or any month thereafter.[1] Walker moved out of the apartment on December 20, 2009. She told federal agents she does not know when Paige left the apartment.

5. Sometime before February 3, 2010, Paige left the apartment and began staying at friends' homes in the area. Paige did not intend to return to the apartment at 557 Allengrove Street.

6. Agent Roselli conducted surveillance at 557 Allengrove Street for approximately one week following his interview with Walker. During that time, he drove by the apartment approximately four to five times at different times of the day. He did not observe any lights or movement inside the apartment, or any vehicles which he believed were connected to the apartment's inhabitants.

7. Roselli spoke to the residents who lived upstairs at 557 Allengrove Street. One of these residents, whom Roselli identified as "Miss Boyer," informed him she had not seen anyone in the first floor apartment for several days.

8. Federal agents contacted Ghauri, who agreed to meet Roselli at 557 Allengrove Street. On February 12, 2010, Ghauri met federal agents at the apartment and gave them consent to enter the premises.

9. Ghauri spoke with Roselli and confirmed he was the owner of the residence. Ghauri told Roselli he had been planning to have a cleaning crew remove Paige's leftover belongings.

---

[1] Although he admits his rent was unpaid and overdue, Paige asserts he did not receive notice of eviction. He furter alleges he had a conversation with Ghauri during which Ghauri told Paige he could have several months to pay the rent due on the apartment. This Court does not find Paige's testimony credible on these points.

10. Roselli observed an eviction notice on either the apartment's front door or a front window.

11. Ghauri tried his key in the apartment's front door, but it did not work. The key worked in the lock on the back door, but an item blocked the agents' entry through that door. The agents gained entry through a back window located in the apartment's master bedroom.

12. In the master bedroom, the agents observed a pair of black sneakers on the closet floor. One sneaker had red splatter on it.

13. The agents seized the sneaker for testing and gave Ghauri a receipt showing the items they had taken from the apartment.

**DISCUSSION**

The Fourth Amendment requires the Government show, by a preponderance of the evidence, that warrantless searches and seizures are reasonable. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). Because the Fourth Amendment's protection against unreasonable searches extends to rental units, a landlord may not consent to a warrantless search of an occupied apartment. *Chapman v. United States,* 365 U.S. 610, 616-17 (1961).

A warrantless search of abandoned property, however, does not violate the Fourth Amendment. *Abel v. United States,* 362 U.S. 217, 241 (1960) (upholding the search of property discarded in a vacant hotel room). This is so because when "a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable." *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005). "Proof of intent to abandon property must be established by clear and unequivocal evidence." *United States v. Fulani,* 368 F.3d 351, 354 (3d Cir. 2004) (citing *United States v. Moody*, 485 F.2d 531, 534 (3d Cir. 1973)).

Paige testified he left the apartment with no specific intent to return.  The Government, however, did not meet its burden to show by clear and unequivocal evidence that Paige abandoned the apartment and all his property therein.  Although Paige did not return to the apartment while he was staying at friends' houses, and although his rent payments were significantly overdue, there is no evidence formal eviction proceedings had been commenced.  His co-tenant, Walker, stated Paige continued to live in the apartment after she left the residence on December 20, 2009.  Moreover, when asked whether he planned to never return to the apartment, Paige responded it was possible he would not return.  Such an answer is too equivocal to provide clear proof Paige intended to abandon his property.

The Government contends, in the alternative, that the FBI agents reasonably believed Ghauri had authority to consent to their search of the apartment and seizure of Paige's shoes.  "A search is constitutional if it is based on reasonable belief that a third party had authority to consent." *Bolden v. Se. Penn. Transp. Auth.*, 953 F.2d 807, 829 n.29 (3d Cir. 1991); *see also Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990) (holding an officer's objectively reasonable belief a third party has the authority to consent can validate a search).  In determining whether officers reasonably believed they had consent to enter, a court must apply an objective standard, inquiring whether "the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Rodriguez*, 497 U.S. at 188 (internal quotation marks and citations omitted).  Even if the consenting party does not have actual authority to consent to a search of the premises, there is no Fourth Amendment violation if an officer has an objectively reasonable, though mistaken, good-faith belief he obtained valid consent to search the area. *United States v. Brazel,* 102 F.3d 1120,

1148 (11th Cir. 1997) (citing *Rodriguez*, 497 U.S. at 186).

Under the circumstances here, Roselli's belief Ghauri had authority to consent to the agents' search of Paige's former apartment and seizure of his remaining belongings was objectively reasonable. While it is unclear whether Paige abandoned the apartment and the property therein, any mistake by Roselli was a mistake of fact, not one of law, and thus does not render the agents' belief unreasonable considering the totality of the circumstances. *See Brazel,* 102 F.3d at 1148-49 (deciding a search was constitutional even though the landlord incorrectly told the officer the apartment was vacant). Paige had not been seen at the apartment by neighbors or Roselli during the time period from February 3, 2010, to February 13, 2010; indeed, he admitted he had not returned to the apartment after he left to stay with friends. Paige and his co-tenant, Walker, had not paid rent for several months. Ghauri told the agents he sent Paige and Walker a notice of eviction, and Roselli observed an eviction notice on the front of the apartment. Ghauri also informed Roselli he intended to send someone to clean up Paige's remaining belongings.

**Conclusions of Law**

1. FBI agents obtained consent to the search of the first floor apartment at 557 Allengrove Street from Ghauri, a person they reasonably believed to be the owner of the apartment.
2. The Government did not show by clear and unequivocal evidence that Paige intended to abandon the property he left at 557 Allengrove Street.
3. The agents' belief Ghauri had authority to consent to the search and seizure of the property in the first floor apartment at 557 Allengrove Street was objectively reasonable.
4. The Government has shown, by a preponderance of the evidence, that the search of 557

Allengrove Street was reasonable.

5.  The sneakers seized during the search are admissible as evidence at trial.

An appropriate order follows.

BY THE COURT:

\_\_\s\ Juan R. Sánchez_____
Juan R. Sánchez, J.